Clerk of Court
United States Court of Appeals
for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790



Re: *In re Jobadiah Sinclair Weeks*
Petition for Writ of Mandamus

Dear Clerk of Court:

Enclosed please find Petitioner's Petition for a Writ of Mandamus, together with
the accompanying Appendix and Certificate of Service, for filing in the
above-referenced matter.

Petitioner does not have access to CM/ECF and therefore respectfully submits
this filing in paper form. The required $500 filing fee is enclosed, payable to the
*Clerk, United States Court of Appeals for the Third Circuit.*

Please docket the enclosed materials accordingly. Thank you for your
assistance.

Respectfully submitted,

Jobadiah Sinclair Weeks
Petitioner, pro se
Date: January 14, 2026

Trump Palace, 18101 Collins ave, #4209

Sunny Isles FL 33160

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13 day of January, 2026, I caused a true and correct copy of the foregoing Petition for Writ of Mandamus with accompanying exhibits to be served by first-class mail, postage prepaid, upon the following:

Trevor Chenoweth

Assistant United States Attorney

United States Attorney's Office

District of New Jersey

970 Broad Street, Suite 700

Newark, NJ 07102

Robert Moore

Assistant United States Attorney

United States Attorney's Office

District of New Jersey

970 Broad Street, Suite 700

Newark, NJ 07102

Jobadiah Sinclair Weeks

Petitioner, pro se

Date: January 14, 2026

21

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT



In re: Jobadiah Sinclair Weeks,

     Petitioner.

---

No. [to be assigned]

On Petition for a Writ of Mandamus from the

United States District Court for the District of New Jersey

(Related case: United States v. Goettsche, Weeks, et al.,

No. 2:19-cr-877 (D.N.J.))

1

## INTRODUCTION

Petitioner respectfully seeks a writ of mandamus directing the United States District Court for the District of New Jersey to issue rulings on limited, discrete matters that have been fully briefed and ripe for disposition for several months following completion of all court-ordered briefing.

This petition does not ask this Court to decide the merits of any underlying motion, nor does it seek to dictate the substance of any ruling. Petitioner seeks only an order requiring that the District Court exercise its jurisdiction and rule on pending matters that remain unresolved despite completion of all court-ordered submissions.

Specifically, the District Court has not ruled on:

(1) pending motions under Federal Rule of Criminal Procedure 41(g) seeking the return of identified, severable seized property; and

(2) court-ordered sealing and unsealing determinations that were fully briefed pursuant to the District Court's own directive.

Petitioner has complied with all procedural requirements, narrowed the issues presented, and submitted brief, non-argumentative status letters requesting guidance. No ruling, schedule, or further instruction has been issued. Absent mandamus, Petitioner has no other adequate means to obtain decisions on these ripe matters.

2

Under these circumstances, issuance of a limited writ directing the District Court to rule is appropriate and consistent with this Court's supervisory authority.

## JURISDICTION

This Court has jurisdiction to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a). The writ is sought in aid of this Court's prospective appellate jurisdiction and to require the United States District Court for the District of New Jersey to exercise its jurisdiction and rule on matters properly before it.

Venue is proper in this Court because the petition seeks relief directed to a district court within the Third Circuit.

## ISSUES PRESENTED

1. Whether mandamus is appropriate to require a district court to rule on pending and ripe motions under Federal Rule of Criminal Procedure 41(g) seeking the return of specific seized property, where the Government has acknowledged seizure, no forfeiture proceedings are pending, and no ruling has issued for an extended period of time.

2. Whether mandamus is appropriate to require a district court to rule on court-ordered sealing and unsealing determinations that were fully briefed

3

pursuant to the district court's own directive, where the parties have
complied and no decision has been issued.

## STATEMENT OF RELEVANT FACTS

### A. Pending Rule 41(g) Motions for Return of Seized Property

Petitioner filed motions pursuant to Federal Rule of Criminal Procedure 41(g)
seeking the return of specific, discrete items of seized property, including
identified digital assets and currency. The motions were subsequently narrowed
and supplemented to focus only on severable property whose existence and
seizure are not disputed.

The Rule 41(g) motions do not seek discovery, evidentiary hearings, or merits
determinations beyond the scope of the rule. They request only that the District
Court either order the return of the identified property or state a lawful basis for
continued retention.

The Government has not asserted that forfeiture proceedings are pending as to
the property identified in the Rule 41(g) motions, nor has it claimed that the
property constitutes contraband. The motions are fully briefed and ripe for
disposition.

Despite the completion of briefing and the narrowing of issues, the District Court has not issued a ruling on the pending Rule 41(g) motions for a prolonged period following completion of briefing.

## B. Court-Ordered Sealing and Unsealing Determinations

In an Opinion and Order dated October 8, 2025, the District Court directed the parties to meet and confer and to submit a joint letter addressing the sealing and unsealing of specified docket entries. The Court set a deadline of October 31, 2025 for that submission.

The parties complied with the Court's directive. Petitioner filed his submission on October 28, 2025, and the Government filed its response on October 31, 2025. In its submission, the Government expressly agreed that multiple docket entries identified by the Court may be unsealed.

The sealing and unsealing issues were therefore fully briefed in accordance with the District Court's instructions and required no further action by the parties.

No ruling has been issued on the court-ordered sealing and unsealing determinations.

## C. Efforts to Obtain a Ruling

After the completion of briefing, Petitioner submitted brief, non-argumentative status letters on December 16 and December 17, 2025, respectfully requesting guidance as to when rulings might issue on the pending matters.

The District Court did not respond with a ruling, schedule, or further instruction. The pending Rule 41(g) motions and the court-ordered sealing and unsealing determinations remain unresolved.

Petitioner has no other adequate means to obtain a ruling on these ripe matters.

## STANDARD FOR MANDAMUS

Mandamus is an extraordinary remedy available under the All Writs Act, 28 U.S.C. § 1651(a), and may issue where: (1) the petitioner has no other adequate means to obtain the relief sought; (2) the petitioner's right to issuance of the writ is clear and indisputable; and (3) issuance of the writ is appropriate under the circumstances.

Although mandamus may not be used as a substitute for appeal, it is appropriate to compel a lower court to exercise its jurisdiction and rule on matters that are properly before it. An unreasonable delay in ruling on ripe matters may satisfy the mandamus standard where the delay is tantamount to a failure to exercise jurisdiction. *See* Madden v. Myers, 102 F.3d 74, 79 (3d Cir. 1996).

6

## ARGUMENT

### I. Petitioner Has No Other Adequate Means to Obtain Relief

Petitioner does not seek review of a decision; he seeks only the issuance of a decision. The pending Rule 41(g) motions and the court-ordered sealing and unsealing determinations have been fully briefed and are ripe for disposition, yet no rulings have been issued.

Because the District Court has not acted, Petitioner lacks any alternative procedural mechanism to obtain relief. There is no order to appeal, no schedule to follow, and no further briefing to complete. Absent mandamus, the matters may remain unresolved indefinitely.

Mandamus is therefore the only available means to require that the District Court exercise its jurisdiction and rule on the pending matters.

### II. The Duty to Rule on Ripe Matters Is Clear and Indisputable

While district courts retain broad discretion as to the outcome of motions, they do not have discretion to decline to decide matters that are properly before them and ripe for adjudication.

This duty applies with particular force to motions under Federal Rule of Criminal Procedure 41(g). Once a Rule 41(g) motion is fully briefed and seeks

7

return of identified property, the court must either order return or articulate a lawful basis for continued retention. The rule does not permit indefinite inaction.

Similarly, where a district court directs the parties to submit briefing on sealing and unsealing issues, receives those submissions, and the issues are ripe, the court has a duty to rule. The parties' compliance with the court's directive completes the record and triggers the obligation to decide.

Petitioner does not contend that the District Court is required to rule in his favor. He contends only that the District Court is required to rule.

### III. The Delay in This Case Is Unreasonable Under the Circumstances

The matters at issue are discrete, severable, and limited in scope. They do not require fact-finding hearings, additional discovery, or further submissions. The delay does not result from ongoing briefing, factual development, or competing jurisdictional demands, but from the absence of any ruling, schedule, or further guidance after completion of the record.

The Government has not asserted that the Rule 41(g) motions are unripe, factually disputed, or dependent on pending forfeiture proceedings. With respect to the unsealing issues, the Government has expressly agreed that multiple docket entries may be unsealed.

Despite these circumstances, no rulings have issued for an extended period of time. The absence of any schedule, guidance, or disposition renders the delay unreasonable and leaves Petitioner without a path forward.

Mandamus is appropriate to prevent continued procedural stasis and to ensure that ripe matters are decided.

### IV. The Relief Requested Is Narrow and Appropriate

Petitioner seeks only an order directing the District Court to issue rulings on:

1. the pending Rule 41(g) motions seeking return of identified seized property; and

2. the court-ordered sealing and unsealing determinations.

Petitioner does not request that this Court resolve the merits of any motion or dictate the substance of the District Court's rulings. Issuance of the writ under these limited circumstances is appropriate and consistent with the supervisory role of this Court.

Petitioner does not seek supervisory rebuke, criticism, or review of the District Court's reasoning or case management, but only an order ensuring that the Court's jurisdiction is exercised through the issuance of rulings.

**PRAYER FOR RELIEF**

For the foregoing reasons, Petitioner respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the District of New Jersey to issue rulings within a reasonable time on:

1. the pending motions brought under Federal Rule of Criminal Procedure 41(g) seeking the return of identified seized property; and

2. the court-ordered sealing and unsealing determinations that were fully briefed pursuant to the District Court's directive.

Petitioner does not request that this Court decide the merits of any underlying motion, nor does he seek any particular outcome. He seeks only that the District Court exercise its jurisdiction and issue rulings on the ripe matters identified above.

**APPENDIX**

The Appendix contains only those materials necessary to demonstrate ripeness, narrowing, and delay:

1. Opinion & Order dated October 8, 2025 (ECF No. 497)

   – Directing the parties to meet and confer and submit joint briefing on sealing and unsealing issues. (see directive regarding sealing/unsealing at pp. 22–23)

2. Petitioner's Submission on Sealing/Unsealing

   (ECF No. 510, filed October 28, 2025)

3. Government's Submission on Sealing/Unsealing

   (ECF No. 512, filed October 31, 2025)

   – Including the Government's express agreement that specified docket entries may be unsealed.

4. Supplemental Motion for Return of Seized Digital Assets and Currency

   (ECF No. 520)

   – Demonstrating narrowing to discrete, severable assets under Rule 41(g).

5. Status Letter Regarding Pending Unsealing Issues

   (ECF No. 540, filed December 16, 2025)

6. Status Letter Regarding Pending Rule 41(g) Motions

   (ECF No. 541, filed December 17, 2025)

Respectfully submitted,

Jobadiah Sinclair Weeks

Petitioner, pro se

[Address on file with the Court]

Date: January 14, 2026

**CERTIFICATE OF COMPLIANCE**

1. This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d) and 32(c)(2) because it contains 1,719 words, excluding the parts of the petition exempted by Rule 32(f).

2. This petition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-point font and is double-spaced, with footnotes in a typeface and size permitted by the Rule.

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

In re: Jobadiah Sinclair Weeks,

    Petitioner.

No. [to be assigned]

**APPENDIX TO PETITION FOR WRIT OF MANDAMUS**

**TABLE OF CONTENTS**

| Exhibit | Description | Page |
|---|---|---|
| A | Opinion & Order dated October 8, 2025 (ECF No. 497) | A-1 |
| B | Petitioner's Submission on Sealing/Unsealing (ECF No. 510) | B-1 |
| C | Government's Submission on Sealing/Unsealing (ECF No. 512) | C-1 |
| D | Supplemental Motion for Return of Seized Digital Assets and Currency (ECF No. 520) | D-1 |
| E | Status Letter re Unsealing (ECF No. 540) | E-1 |
| F | Status Letter re Rule 41(g) Motions (ECF No. 541) | F-1 |

# APPENDIX

**Exhibit A**

Opinion & Order dated October 8, 2025

(ECF No. 497)

United States District Court

District of New Jersey

**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 19-877 |
| v. | |
| | **OPINION & ORDER** |
| JOBADIAH SINCLAIR WEEKS, | |
| Defendant. | |

**CECCHI, District Judge.**

Before the Court are numerous motions filed by pro se defendant Jobadiah Sinclair Weeks ("Weeks" or "Defendant"), including: a motion to dismiss and an amended motion to dismiss (ECF Nos. 396, 400), a second motion to dismiss count one of the indictment (ECF No. 451), a second motion to dismiss count two of the indictment (ECF No. 453), a motion to withdraw his plea of guilty (ECF No. 401), motions to compel discovery (ECF Nos. 402, 403, 406, 477), a motion to expedite a ruling on a motion to compel discovery (ECF No. 404), a motion to stay (ECF No. 430), a motion to withdraw the motion at ECF No. 396 (ECF No. 442), a motion for return of seized assets (ECF No. 446), a motion for leave to file supplemental memorandum (ECF No. 452), a motion to seal (ECF No. 466), a motion to compel "prompt ruling on limited disclosure relief" as described in ECF No. 448 (ECF No. 467), a motion to compel a ruling on the motion at ECF No. 446 (ECF No. 469), a motion to declare a continuance order invalid (ECF No. 482), letter requests to unseal Defendant's prior sealed filings (ECF No. 484, 489), and a motion to compel accounting of seized assets (ECF No. 486). The Government filed a letter and a brief in opposition to eight of Defendant's motions at ECF Nos. 396, 400, 401, 402, 403, 404, 406, and 407. *See* ECF Nos. 399, 417. Defendant filed two replies (ECF Nos. 420, 421) and numerous supplemental

submissions (ECF No. 432, 441, 443, 471, 474, 475, 480, 481, 483, 485). The Court has considered the parties' submissions, and for the reasons expressed below, Defendant's motions are denied.

## I.    BACKGROUND

On December 5, 2019, Defendant was charged in a two-count, multi-defendant Indictment with wire fraud conspiracy in violation of 18 U.S.C. § 1349 (Count One) and conspiracy to offer or sell unregistered securities in violation of 18 U.S.C. § 371 (Count Two). ECF No. 1. On November 5, 2020, Defendant was charged by Information with one count of tax evasion, in violation of 26 U.S.C. § 7201. ECF No 145.

The Indictment alleges that from 2014 through 2019, Defendant was a promoter for the BitClub Network ("BCN"), a scheme in which investors bought shares in "mining pools" that funded BCN's Bitcoin mining operations.[1] ECF No. 1 at 1–2, 12–13. BCN represented that investors would receive returns based on each pool's mining success. *Id.* at 13–14. Despite selling shares to investors, BCN did not file a registration statement to register shares of BCN with the U.S. Securities and Exchange Commission ("SEC"). *Id.* at 15. The Indictment further alleges that Defendant's role in the operation involved promoting the sale of BCN shares through materially false representations and promises, and conspiring to take money from investors in exchange for BCN membership and shares. *Id.* at 4, 16–17, 19–23. The Information asserts that Defendant earned approximately $18 million through his affiliation with BCN, but did not report those earnings on a U.S. Individual Income Tax Return, Form 1040 ("Form 1040") and took steps to avoid detection by U.S. law enforcement. ECF No. 145 at 2. Defendant ultimately failed to pay approximately $7 million in federal income taxes to the United States. *Id.*

---

[1] "Mining" is the complex computer process by which new Bitcoin is produced. ECF No. 1 at 2.

2

On December 10, 2019, Defendant was arrested in Florida and was detained following a bail hearing in the Southern District of Florida. ECF No. 399 at 1. On February 14, 2020, Magistrate Judge Michael A. Hammer denied Defendant bail, and on March 30, 2020, denied Defendant's motion for temporary release. ECF Nos. 45, 48, 68, 79.

On November 5, 2020, Defendant waived his right to indictment on the tax evasion count (ECF No. 146) and entered a guilty plea to both Count Two of the Indictment and the one-count Information (ECF No. 149). The Government agreed to move for dismissal of Count One of the Indictment at the time of sentencing if Defendant fully complied with the plea agreement. ECF No. 417-1 at 11:1–4. At the plea hearing, the Court asked Defendant, who was counseled by his prior attorney, whether he understood that any false statements he makes during the hearing may be used against him in a prosecution for perjury. *Id.* at 13:1–4. Defendant confirmed his understanding. *Id.* at 13:5. After a lengthy colloquy confirming Defendant's understanding of the Plea Agreement and his rights, Defendant entered a plea of guilty:

> THE COURT: Why did you decide to enter the plea of guilty, because you're, in fact, guilty or for some other reason?
>
> THE DEFENDANT: Because I'm guilty.
>
> THE COURT: How do you plead to the charge, sir, or the charges rather: Guilty or not guilty?
>
> THE DEFENDANT: Guilty.

*Id.* at 42:7–13. Defendant further admitted, under oath, that he understood the essential elements of the crimes to which he pleaded guilty: conspiring to offer or sell unregistered securities and tax evasion. *Id.* at 22:12–24:12.

On November 6, 2020, Defendant was released on a $2 million bond secured by various property. ECF No. 153. Defendant was subjected to home incarceration with electronic monitoring, restricted travel, and was directed to provide a full accounting of all financial holdings,

including domestic and foreign bank accounts, and any and all cryptocurrency holdings. ECF No. 399 at 2. The Government consented to Defendant's release. *Id.* On March 19, 2021, the conditions of Defendant's release were modified from home incarceration to home detention to allow Defendant to seek employment. ECF No. 189. However, on August 6, 2021, the Government moved to revoke Defendant's bail based on Weeks' promotion of certain unregistered securities. ECF No. 399 at 2. In lieu of revocation, the parties agreed to modified bail conditions, which included several restrictions such as revoking Defendant's possession of a smart phone and limiting Defendant's internet communications. *Id.*; ECF No. 220.

On February 22, 2024, Pre-Trial Services petitioned for a violation of Defendant's supervised release based on unauthorized travel, use of electronic devices, and unauthorized financial transactions. ECF No. 320. Defendant also moved to relax the conditions of his release. ECF No. 317. Judge Hammer denied the request for revocation and Defendant's motion to relax the conditions, and imposed more restrictive modifications to the conditions of release based on his conclusion that Defendant violated the prior conditions. ECF No. 331; ECF No. 370 at 14:11– 21:17.

On February 5, 2025, Judge Hammer held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), at which Defendant moved to proceed pro se. ECF No. 393. Judge Hammer granted Defendant's motion, and Defendant's counsel were terminated from the case. ECF Nos. 393, 394. On February 10, 2025, the Court appointed stand-by counsel to assist Defendant. ECF No. 395.

On May 20, 2025, Judge Hammer held another bail violation hearing in response to the Government's motion to revoke bail and numerous submissions by Defendant seeking to relax the conditions of his release. ECF No. 447 at 5:2–10. Judge Hammer found that Defendant violated

4

the conditions by using an internet-connected device to solicit investments in an investment fund through the Signal app under an alias. *Id.* at 35:11–44:1. Accordingly, Judge Hammer denied Defendant's requests and reinforced his release conditions. *Id.* at 48:15–49:12.

Since the hearing on February 5, 2025, Defendant has submitted twenty-one motions before this Court, in addition to several motions to modify the conditions of his release. Defendant has also filed over a dozen letters and supplemental submissions. The Court notes that several of Defendant's motions are repetitive and/or seek to amend or supplement prior submissions. Nonetheless, the Court has reviewed all of Defendant's submissions.

## II. DISCUSSION

The Court turns first to Defendant's motion to withdraw his guilty plea. As discussed in detail below, Defendant's motion to withdraw his guilty plea is denied, which consequently renders most of his other motions moot.

### A. Motion to Withdraw Guilty Plea

A defendant may withdraw his guilty plea after the Court has accepted his plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). There is no absolute right to withdraw a guilty plea, *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001), and the defendant bears a "substantial burden" of showing a fair and just reason for withdrawing a plea, *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010). To determine whether a defendant has made this showing, the Court considers whether: "(1) the defendant asserts his innocence; (2) the defendant proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal." *United States v. Napper*, 767 F. App'x 271, 273 (3d Cir. 2019) (quoting *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011)).

### 1. Innocence

To satisfy the first factor, Defendant must make a credible showing of innocence supported by a factual record. *U.S. v. Ho-Man Lee*, 664 F. App'x 126, 128 (3d Cir. 2016). In his motion to withdraw his guilty plea, and in his supplemental submissions in support of his motion, Defendant appears to make five arguments in support of his innocence: (1) he is not guilty of trading unregistered securities because Bitcoin and Bitcoin mining equipment are not securities, and shares purchased with Bitcoin are not securities; (2) Defendant did not have notice that the charged activities were securities transactions; (3) Defendant is not aware of any victims of his conduct; (4) BCN is a private membership association, not a company, and so the Government has no authority over it; and (5) Defendant was living abroad at the time of alleged tax evasion, and so he was not required to pay taxes.

First, Defendant argues that he is not guilty of conspiring to trade unregistered securities because "computer equipment" and "Bitcoin" are not securities. ECF No. 401 at 42–47. However, Defendant is not charged with conspiring to trade computer equipment or Bitcoin; he is charged with, and pleaded guilty to, conspiring to promote and sell shares in BCN mining pools. ECF No. 1 at 12, 18–20 (Weeks explaining in promotion video that "whatever the mine finds each day is evenly disbursed in a daily dividend to our shareholders"); ECF No. 417-1 at 36:17–19 (THE GOVERNMENT: "Do you agree that these [BCN] shares were, in fact, securities?" THE DEFENDANT: "Yes."); ECF No. 417-1 at 36:24–37:2 (THE GOVERNMENT: "Did you also take money from investors as an investment for shares of mining pools that [BCN] purported to own and operate?" THE DEFENDANT: "Yes.").

BCN shares are securities as defined by 15 U.S.C. § 77b(a)(1) and *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946) (the "*Howey* test"). *See* ECF No. 1 at 15 ("Shares in BCN were

6

'securities' as that term is defined by Title 15, United States Code, Section 11b(a)(1)"); *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946) (holding that an investment contract qualifies as a security if it meets four requirements: (i) an investment of money; (ii) in a common enterprise; and (iii) an expectation of profits; (iv) to be derived solely from the efforts of individuals other than the investor). Courts have found that investments in Bitcoin-mining programs are securities under the *Howey* test. *See SEC v. Teshuater, LLC*, No. 20-01187, 2024 WL 1348432, at *4–5 (S.D. Tex. Mar. 29, 2024) (holding that investments in a Bitcoin-mining program are securities); *SEC v. Shavers*, No. 13-416, 2014 WL 12622292, at *7 (E.D. Tex. Aug. 26, 2014) (same). This Court agrees. BCN shareholders (i) invested money; (ii) in a common enterprise (BCN) in which BCN funded its mining operations with shareholders' investments; (iii) shareholders had a reasonable expectation of profits based on the representations of BCN; (iv) to be derived solely from the efforts of the BCN mining program. *See Howey*, 328 U.S. at 301; *Teshuater*, 2024 WL 1348432, at *4; ECF No. 1 at 12–14.

Defendant also appears to argue that BCN shares are not securities because investors bought shares in exchange for Bitcoin, not money, and so there was no "investment of money," as the *Howey* test requires. ECF No. 401 at 37 ("[BCN] didn't use money."); *Howey*, 328 U.S. at 301 ("The test is whether the scheme involves an *investment of money* in a common enterprise with profits to come solely from the efforts of others.") (emphasis added). However, "it is well established that cash is not the only form of contribution or investment that will create an investment contract." *See Uselton v. Com. Lovelace Motor Freight, Inc.*, 940 F.2d 564, 574 (10th Cir. 1991); *see also Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 559 (1979) (holding that the investment of money prong is satisfied when an investor "[chooses] to give up a specific consideration in return for a separable financial interest with the characteristics of a security").

Courts have found that an investment of Bitcoin, rather than money, satisfies the "investment of money" prong of the *Howey* test. *See Shavers*, 2014 WL 12622292, at *6 (finding that an investment of Bitcoin constitutes an "investment of money" under *Howey*); *In re BitConnect Sec. Litig.*, No. 18-80086, 2019 WL 9104318, at *7 (S.D. Fla. Aug. 23, 2019) (same). This Court agrees, and finds that shares of BCN are securities even if investors purchased them with Bitcoin.

Second, Defendant contends that he had no "clear advance notice" that his conduct was illegal, because Count Two of the Indictment was "based on interpretations of federal securities law that did not exist at the time of the alleged conduct." ECF No. 471 at 1. Defendant argues that "[n]o federal agency had issued formal rules, notices, or policy statements applying securities registration requirements to cooperative mining pools." ECF No. 452 at 3. This position fails for two reasons. First, as discussed in detail above, Defendant was not indicted based on a novel theory of securities law; he was charged with conspiring to offer and sell unregistered shares of BCN, which are securities as defined by the *Howey* test, established in 1946. *See Howey*, 328 U.S. at 301; *Teshuater*, 2024 WL 1348432, at *4; *Shavers*, 2014 WL 12622292, at *7. Second, Section 5 of the Securities Act of 1933—the statute underlying Count Two that prohibits the offering or sale of unregistered securities—"imposes strict liability." *S.E.C. v. Current Fin. Servs., Inc.*, 100 F. Supp. 2d 1, 6 (D.D.C. 2000); *see also* ECF No. 1 at 15. "Scienter is not required under Section 5 of the Securities Act," and so "[i]t therefore is irrelevant whether [Defendant] knew what he was selling was a security." *Id.*; *S.E.C. v. U.S. Funding Corp.*, No. 02-2089, 2006 WL 995499, at *5 (D.N.J. Apr. 11, 2006) ("A showing of scienter is not required under Section 5."). Therefore, Defendant's argument that he had no notice of the illegality of his conduct is unavailing.

Third, Defendant contends that he is innocent of Count Two because he is "not aware of anyone [he has] ever harmed in the context of [BCN]." ECF No. 401 at 24; *see also* ECF No. 421

8

at 23–25. However, Section 5 liability does not hinge on proof of harm, loss, or victimization—the mere offer or sale of unregistered securities is sufficient. *See* 15 U.S.C. § 77e. The elements of the underlying offense are "(1) no registration statement was in effect as to a security; (2) the defendant offered to sell or sold the security; and (3) the defendant used interstate commerce in connection with the offer or sale." *U.S. Sec. & Exch. Comm'n v. Vuuzle Media Corp.*, No. 21-1226, 2023 WL 4118438, at \*6 (D.N.J. June 22, 2023). Accordingly, whether Defendant's conduct caused harm to any victims is irrelevant to his innocence.

Fourth, Defendant argues that BCN "was a Private Membership Association (PMA) that handles its own legal affairs and doesn't burden this court," and that the "SEC/Government has no right to dictate what private membership organizations do with private men and women." ECF No. 401 at 42. Defendant cites no legal authority that supports this assertion. Indeed, "it is immaterial whether a person consents to federal law; the laws of the United States apply to all persons within its border." *United States v. Reilly*, No. 15-196, 2016 WL 7335680, at \*1 (W.D. Pa. Dec. 16, 2016) (quoting *United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003)) (internal quotation marks omitted).

Fifth, Defendant argues that he is not guilty of tax evasion because he "was living abroad at the time of the alleged offense and situated as a nonresident alien and NOT a civil statutory citizen." ECF No 401 at 19, 30. He also asserts that it is "against the constitution to force Americans to file" taxes. *Id.* at 34. But Defendant stated in his plea colloquy that he is a U.S. citizen and the Information states that Defendant was a resident of Colorado at the time of the charged conduct, and Defendant provides the Court with no evidence to presume otherwise. *See* ECF No. 417-1 at 32:17–19; ECF No 145 at 1. Additionally, at the plea colloquy, Defendant agreed that he "willfully attempt[ed] to evade and defeat income taxes due and owing by you to

9

the United States of America for the calendar years 2015, 2016, 2017, and 2018." ECF No. 417-1 at 39:7–12. Furthermore, "[t]he collection of income tax has long been deemed constitutional and arguments to the contrary will not succeed." *Johnson v. N.J., Div. of Motor Vehicles*, 134 F. App'x 507, 509 (3d Cir. 2005) (citing U.S. Const. art. I, § 8; U.S. Const. amend XVI). For these reasons, Defendant fails to make a credible showing of innocence supported by a factual record.

### 2. Justification for Withdrawal

To satisfy the second factor, Defendant must provide "strong reasons" to justify a withdrawal of a "solemn admission" of guilt. *King*, 604 F.3d at 139; *Ho-Man-Lee*, 664 F App'x at 128. "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown*, 250 F.3d at 815. Defendant makes numerous arguments in support of his plea withdrawal: (1) the Court does not have jurisdiction over Defendant; (2) Defendant's plea was compelled under duress; (3) Defendant's counsel "defrauded" him and denied him meaningful access to discovery; (4) there is insufficient evidence to prove Defendant's guilt; (5) the Government and the court system are corrupt; (6) Defendant pleaded guilty under the assumption that his seized assets would be preserved, but they were not; (7) Defendant was selectively prosecuted, as other BCN members who were allegedly equally culpable were not prosecuted; (8) the Government allegedly violated *Brady* and *Giglio*; and (9) the Government violated policies promulgated by the Department of Justice ("DOJ").

First, Defendant repeatedly contends that the Court does not have jurisdiction over him because he is a "living man" named "Jobadiah-Sinclair of the family Weeks," and is not the Defendant, who is purportedly a "commercial vessel" called "JOBADIAH SINCLAIR WEEKS." ECF No. 401 at 60–61. Defendant stated he "made a mistake by autographing 'Jobadiah Weeks'

10

in the stead of a person listed on the document by the name of JOBADIAH SINCLAIR WEEKS who he was/is not." *Id.* at 15, 25, 34–35, 51–52, 60–61. Defendant has not articulated any basis for this contention under the United States Constitution, any federal statute, case law, the Federal Rules of Criminal Procedure, or any other binding legal authority. Courts are familiar with arguments that the court lacks jurisdiction over an individual because he is not the defendant, but is instead the "living man," and routinely find them to be meritless and "patently frivolous." *United States v. Burris*, 231 F. App'x 281, 282 (4th Cir. 2007); *see also United States v. Wiggins*, No. 21-630, 2023 WL 8876074, at *5 (D.N.J. Dec. 22, 2023); *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 245 (D.N.J. 2011) (rejecting arguments that "live persons . . . hold 'estates' in the form of actual physical bodies"). Therefore, to the extent Defendant's submissions are understood as a challenge to this Court's jurisdiction over him, they are rejected.

Second, Defendant states that his "plea statement was compelled under illegal threat, duress, and coercion through kidnapping [and] false allegations of securities violations," and that he pleaded guilty "so that [he] could get bail." ECF No. 401 at 15–16. For these reasons, Defendant contends that his plea was "a deliberate lie under illegal duress." *Id.* at 16. However, Defendant does not point to a single instance of intimidation, threat, duress, or coercion. Instead, Defendant appears to argue that he pleaded guilty only so that he would be released from federal confinement, which he characterized as "torture." *See id.* at 17, 20, 22–23. Courts recognize that "[w]hile time in a prison is certainly not pleasant, it does not provide defendant a credible basis to withdraw a guilty plea." *United States v. Levin*, No. 19-728, 2022 WL 17811394, at *3 (E.D. Pa. Dec. 19, 2022). To the extent Defendant argues that his plea was coerced by fear of further punishment, "[i]t is well-settled that a guilty plea is not coerced when a defendant is motivated by avoiding the possibility that he will be convicted at trial and face a higher authorized penalty."

11

*United States v. Valerio*, 541 F. App'x 174, 177 (3d Cir. 2013) (citing *Brady v. United States*, 397

U.S. 742, 750–51 (1970). Furthermore, Defendant testified under oath that he signed the Plea

Agreement free of inducement or duress, and has made no argument to convince the Court

otherwise:

> THE COURT: Other than the representations which may be set forth in the Plea
> Agreement and in court today, did anyone offer you any inducement or make any
> promise to you in order to get you to sign the document?
>
> THE DEFENDANT: No.
>
> . . .
>
> THE COURT: Did anyone physically threaten you, verbally threaten you or
> threaten you in any way in order to have you sign the Plea Agreement and enter a
> plea of guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Did you sign the document voluntarily?
>
> THE DEFENDANT: I did.

ECF No. 417-1 at 17:10–14; 18:1–6. The Court finds that Defendant testified truthfully at his

guilty plea hearing, that no one threatened him or induced him to plead guilty, and that his guilty

plea was made of his own free will.

Third, Defendant asserts that his lawyers "defrauded" him, because they acted as "'plea

bargaining specialists' to avoid the REAL work of a trial." ECF No. 401 at 18. However,

Defendant does not explain how his lawyers "defrauded" him, and "a lawyer's recommendation

that his client accept a guilty plea is not, on its own, improper compulsion." *Brooking v. McGinley*,

No. 21-2239, 2024 WL 3237152, at *3 (E.D. Pa. June 28, 2024). Defendant also contends that

counsel never granted him meaningful access to discovery before entering his plea, and so his plea

was not informed. *See* ECF No. 488. But Defendant "has not shown that his argument . . . —that

he wasn't timely given access to discovery by counsel which would have changed his plea

decision—amounts to anything more than a 'shift in defense tactics' or 'a change of mind,' which

12

we have held 'are not adequate' to support a motion to withdraw a guilty plea." *United States v. Hill-Johnson*, 806 F. App'x 114, 118 (3d Cir. 2020). "Moreover, even if [Defendant] was not personally provided with discovery, he is not entitled to withdraw his guilty plea on this basis." *United States v. Parsons*, No. 13-0104, 2015 WL 857313, at *15 (E.D. Pa. Feb. 27, 2015). Furthermore, at his plea hearing, Defendant testified:

> THE COURT: Do you have any questions or concerns which you feel your attorney has not satisfactorily answered?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you satisfied with your attorney's representation?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is the decision to enter a plea of guilty your decision or is it your attorney's decision?
>
> THE DEFENDANT: It's my decision.

ECF No. 417-1 at 19:25–20:4. Accordingly, the record does not demonstrate that Defendant's lawyers "defrauded" Defendant, compelled Defendant's guilty plea, or failed to meaningfully review and provide Defendant with discovery such that withdrawal is warranted.

Fourth, Defendant argues that "[n]o evidence has been presented that demonstrates causal connection between any act or omission of the [Defendant] that directly caused any of the alleged damages to the [BCN] members." ECF No 401 at 13, 29. This argument is an impermissible basis for withdrawing a guilty plea because it appears to be a "shift in defense tactics" or "a change of mind." *Brown*, 250 F.3d at 815. Defendant had the right to go to trial if he believed the Government had "no evidence" of his guilt, but he waived that right under oath:

> THE COURT: Do you understand that you have the right to a trial by a jury, or by a court without a jury, and you would be presumed innocent until proven guilty beyond a reasonable doubt, and by entering this plea of guilty you are giving up that right?
>
> THE DEFENDANT: Yes.

13

> THE COURT: Do you understand that at trial the Government is required to prove each and every element of the crimes charged beyond a reasonable doubt, and that by entering this plea of guilty you are giving up that right?
>
> THE DEFENDANT: Yes.

ECF No. 417-1 at 33:19–34:3. Defendant further states, in one of his reply briefs, that "new evidence undermines the plea's factual basis." ECF No. 421 at 9. However, Defendant does not cite to or detail any "new evidence" uncovered after his plea hearing. Therefore, the Court cannot permit Defendant to withdraw his guilty plea based on a conclusory assertion that there is new evidence. *See, e.g.*, *United States v. Kwasnik*, 55 F.4th 212, 217 (3d Cir. 2022) (affirming district court's denial of motion to withdraw guilty plea because, *inter alia*, defendant failed to demonstrate that new evidence rebutted facts to which defendant testified at plea hearing).

Fifth, Defendant makes a number of unsubstantiated claims that the prosecutors, judges, and other government officials involved in his case have engaged in "massive corruption" and are "the actual criminals." *See* ECF No. 401 at 23–24, 30–31, 37–39, 41, 45–46, 49–51, 59, 67–68, 75–76. Defendant provides no evidence or credible argument to support these contentions, and "generalized, unsupported allegations about corruption of the legal profession or the courts will not do." *Courboin v. Scott*, No. 15-2639, 2016 WL 852782, at *6 (D.N.J. Mar. 3, 2016). Defendant mentions one instance of what he describes as "malicious intent," in which the Government returned Defendant's passport to him after he was released on bail after entering his guilty plea, which he implies was an attempt to "entice" him to violate bail and flee with the passport. ECF No. 401 at 23. Similarly, Defendant points to the Government's attempts to revoke his bail as evidence of contempt for him. *Id.* Even if the Court accepted these allegations as evidence of "contempt" against Defendant, Defendant does not demonstrate why the Government's described conduct warrants a withdrawal of his guilty plea.

14

Sixth, Defendant argues that he pleaded guilty under the assumption that his seized assets would be preserved, but they allegedly were not. However, Defendant identifies no provision in the Plea Agreement or statement in the plea colloquy that guarantees the return of his seized assets as part of his guilty plea. And when asked whether "anyone offer[ed] [him] any inducement or [made] any promise to [him] in order to get [him] to sign the document," other than "the representations which may be set forth in the Plea Agreement and in court today," Defendant answered, "no." ECF No. 417-1 at 17:10–14. Defendant affirmed under oath that he was not relying on any representations beyond those contained in the plea agreement or made in court at the plea hearing, and he offers no basis to suggest that this statement was the product of coercion. Additionally, Defendant attested that he was pleading guilty because he is guilty, not because his assets would be returned to him:

> MR. TORNTORE: Are you pleading guilty to Count 2 of the Indictment because you are, in fact, guilty of the charged offense?
> THE DEFENDANT: Yes.
>
> …
>
> MR. TORNTORE: And are you pleading guilty to Count 1 of the Information because you are, in fact, guilty of tax evasion?
> THE DEFENDANT: Yes.

*Id.* at 39:3–6; 40:20–23.

Seventh, Defendant argues that the Government "left over a million [BCN] members, like me, out of the prosecution's conspiracy theory" and that those "members were doing exactly what I was doing at the time of the . . . indictment." ECF No. 401 at 22. "The Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). However, selectivity in the enforcement of criminal laws is impermissible when based upon an "unjustifiable standard, such as race, religion, or some other arbitrary factor." *United States v.*

*Taylor*, 686 F.3d 182, 197 (3d Cir. 2012). Here, Defendant does not identify any unjustifiable standard on which the Government based his prosecution. He merely states that millions of other BCN members were engaged in the same conduct as him, but does not allege that the Government singled him out for any arbitrary reason. ECF No. 401 at 22. "The mere fact that one person is prosecuted for a crime while another is not does not support a claim of selective prosecution." *Noel Pane v. Town of Greenburgh*, No. 07-3216, 2012 WL 12887036, at *18 (S.D.N.Y. Jan. 10, 2012), *aff'd sub nom. Pane v. Gramaglia*, 509 F. App'x 101 (2d Cir. 2013); *accord United States v. Johnson*, 94 F. App'x 964, 966 (3d Cir. 2004).

Moreover, even if Defendant had offered evidence of selective prosecution on unjustifiable grounds—which he has not—he has failed to show that this information was unavailable to him prior to the entry of his plea. Accordingly, even assuming selective prosecution occurred, Defendant has not demonstrated that awareness of it would have altered his decision to plead guilty. *See Mathis v. United States*, No. 20-8951, 2021 WL 1783285, at *4 (D.N.J. May 5, 2021) (finding that Defendant did not establish how the factors presented would have altered his decision to plead guilty).

Eighth, Defendant raises, for the first time in his reply brief, that the government withheld material exculpatory evidence in violation of *Brady* and *Giglio*. ECF No. 421 at 4. One "withheld" item Defendant refers to is "the October 8, 2020 Grand Jury Evaluation Memorandum," which allegedly "contains key factual assessments and characterizations relevant to discovery, plea considerations, and prosecutorial framing, was not available to the defense at the time of plea signing." *Id.* at 6. Defendant contends that "[i]ts creation after the agreement but before the formal plea hearing suggests a strategic delay in material production [and] deprived Defendant of material evidence necessary to assess the merits and fairness of the plea." *Id.* Defendant also points to

16

"Suspicious Activity Reports (SARs), Memoranda of Interview (MOIs) from April and December 2019, [and] the December 2019 Crypto Seizure Memo," which were allegedly not disclosed until years after the plea agreement was signed. *Id.* at 8. Lastly, Defendant states that he was never provided documentation of an August 12, 2020 proffer session, during which the Government claims Defendant admitted his knowledge of BCN's fraudulent activities. *Id.* at 11.

As an initial matter, to the extent Defendant argues that he was entitled to government work product—for example, "plea considerations and prosecutorial framing"—a criminal defendant "may not examine Government work product in connection with his case." *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 257 (3d Cir. 2005) (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). But in any event, Defendant provides no elaboration as to what each of the purported documents contain, how they are material to his guilt and favorable to his defense, why he did not have access to the information contained in the documents prior to his plea, or how the documents would have altered his plea entry. Instead, Defendant provides vague descriptions of the importance of the documents, such as describing documents as "central to discovery and plea evaluation," "significan[t]," "critical," and "indispensable." *Id.* at 10, 14–15. And even if Defendant did not receive these materials before entering his guilty plea, his submissions provide no indication that they constitute *Brady* or *Giglio* material. Without more, the Court cannot determine that Defendant's lack of access to these documents before signing his plea agreement is a "strong reason[]" to justify a withdrawal of a "solemn admission" of guilt. *King*, 604 F.3d at 139; *Ho-Man-Lee*, 664 F. App'x at 128.

Ninth, and lastly, Defendant argues that his prosecution violates an April 7, 2025 enforcement memorandum issued by the DOJ, which he believes "makes clear that digital asset cases should be pursued only when involving identifiable harm or criminal misuse." ECF No. 421

17

at 17, 28–29. The memorandum to which Defendant refers is an intra-office memorandum addressed to all DOJ employees from the Deputy Attorney General that outlines enforcement priorities. *See* ECF No. 421 at Ex. C. Setting aside that this memorandum was issued years after Defendant's guilty plea, intra-office memorandums of this kind "are not binding authority." *Ralda v. Att'y Gen. of U.S.*, 441 F. App'x 101, 104 n.4 (3d Cir. 2011) (holding that internal documents like a U.S. Citizenship and Immigration Services memorandum directed to asylum officers are not binding authority); *Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004) ("Agency statements contained in opinion letters, policy statements, agency manuals, and enforcement guidelines lack the force of law."). Therefore, the cited DOJ memorandum does not justify a withdrawal of Defendant's guilty plea.

For these reasons, Defendant has not shown "strong reasons" to justify a withdrawal of a "solemn admission" of guilt. *King*, 604 F.3d at 139; *Ho-Man-Lee*, 664 F App'x at 128.

### 3. Government Prejudice

The third prong involves whether the plea withdrawal would prejudice the Government. "[I]f the defendant fails the first two prongs of the test for withdrawal of a guilty plea, there is no need to consider the third, prejudice to the Government." *United States v. Carroll*, 179 F. App'x 128, 132 (3d Cir. 2006). Defendant has not met his burden on the first two prongs of the three-pronged test to determine if there is a fair and just reason for withdrawing his guilty plea. Therefore, the Court need not consider the third prong. Nonetheless, withdrawal of a plea "almost invariably prejudices the government to some extent and wastes judicial resources." *United States v. Hough*, No. 02-649, 2010 WL 5250996, at *3 (D.N.J. Dec. 17, 2010). And here, prejudice would be particularly extreme, given that the Government would be required to mount a criminal trial nearly six years after the Indictment was lodged, and nearly five years after Defendant's guilty

plea was entered. *See* ECF Nos. 1, 149; *see also Doe v. United States*, 112 F. Supp. 2d 398, 407 (D.N.J. 2000) (holding that "that the government would probably suffer prejudice by having to try petitioner over four years after he was indicted"). Accordingly, the Court finds that a plea withdrawal would prejudice the Government.

Given that the balance on each prong weighs decisively against Defendant, and the Court has found his arguments unpersuasive, Defendant's motion to withdraw his guilty plea is denied.

### B. The Forfeiture Motions

Defendant has filed several motions seeking the return and accounting of his seized assets, including cryptocurrency, cash, and other physical personal property. *See* ECF Nos. 446, 448,[2] 486. Defendant brings these motions under Rule 41(g) of the Federal Rules of Criminal Procedure. *See id.* Rule 41(g) provides that a motion to return property "must be filed in the district where the property was seized." Fed. R. Crim. P. 41(g). As discussed below, Defendant's representations demonstrate that the property at issue was not seized in the District of New Jersey, and so his motion to return property seized outside of this district is denied.

Defendant states that on December 10, 2019, federal agents executed a search warrant at two locations—West Palm Beach, Florida, and Arvada, Colorado—and seized cryptocurrency held in wallets and hardware devices, precious metals, cash, stock certificates, business records, computers, phones, and digital storage devices. ECF No. 446 at 1; ECF No. 448 at 2. Defendant also notes that cash was seized directly from his person during his arrest at the Palm Beach County Jail in Florida. *Id.* Defendant does not assert than any of his property was seized within the District of New Jersey, and in fact, his motions indicate that the forfeitures occurred in Colorado and

---

[2] ECF No. 448 is not a pending motion. Rather, it was filed as a "supplemental notice of post-filing discrepancies and request for judicial relief." ECF No. 448. The Court incorporates its content and requests for relief in ECF Nos. 446 and 486.

Florida. Therefore, Defendant's motions (ECF Nos. 446, 486) are denied. *See United States v. Payne*, No. 04-299-08, 2010 WL 11652392, at *2 (W.D. Pa. May 3, 2010) (denying motion to return property filed in Western District of Pennsylvania because property at issue was not seized in that district); *United States v. Thomas*, No. 06-299, 2015 WL 13448019, at *2 (W.D. Pa. Sept. 8, 2015) (denying motion to return property filed in Western District of Pennsylvania because property was seized in the Northern District of Georgia). Additionally, Defendant's motions to compel a ruling on the motion to return property at ECF No. 446 (ECF Nos. 467, 469) are denied as moot, given the Court's instant decision denying the motion at ECF No. 446.

## C. The Continuance Motion

Defendant filed a motion "to declare continuance order (DKT. 478) invalid as applied to Defendant Weeks." ECF No. 482. The Order for Continuance at ECF No. 478 was issued in response to a joint application of the United States and Defendant's co-defendant Matthew Brent Goettsche for an order granting a continuance of proceedings. *See* ECF No. 478. "[T]he [speedy trial] guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges." *Syed v. United States*, No. 15-5687, 2018 WL 3492151, at *5 (D.N.J. July 19, 2018) (quoting *Betterman v. Montana*, 578 U.S. 437, 439 (2016)). Here, Defendant has pleaded guilty to criminal charges, and for the reasons discussed above, the Court has denied his motion to withdraw his guilty plea. Accordingly, continuance orders, which exclude time from the speedy trial clock calculation, do not affect Defendant's case. Therefore, Defendant's motion to declare the continuance order invalid as to him is denied.

### D. Remaining Motions

Defendant submitted several additional motions, including four motions to dismiss (ECF Nos. 396, 400, 451, 453), four motions to compel discovery (ECF Nos. 402, 403, 406, 477), a motion to expedite a decision on ECF No. 403 (ECF No. 404), a motion to stay the case (ECF No. 430), a motion to withdraw the motion at ECF No. 396 (ECF No. 442), a motion for leave to file supplemental memorandum on count two (ECF No. 452), a motion to seal (ECF No. 466), a motion to compel "prompt ruling on limited disclosure relief" (ECF No. 467), and a motion to compel a ruling on ECF No. 446 (ECF No. 469).

"[A] motion to dismiss an indictment cannot be lodged after the defendant has pled guilty." *United States v. Miller*, 197 F.3d 644, 647 (3d Cir. 1999); *United States v. Hoffman*, No. 17-80, 2025 WL 2581936, at *2 (D.N.J. Sept. 5, 2025) ("Since Defendant moved to dismiss the Indictment post-guilty plea, Defendant's Motion to Dismiss is untimely."). As discussed above, the Court has denied Defendant's motion to withdraw his guilty plea and has found that Defendant's testimony at his plea hearing was truthful. Furthermore, the Government has agreed to dismiss Count One of the Indictment at Defendant's sentencing. ECF No. 417-1 at 11:1–4. Accordingly, Defendant's motions to dismiss (ECF Nos. 396, 400, 451, 453) and motion for leave to file a supplemental memorandum for Defendant's motion to dismiss Count Two (ECF No. 452) are denied as moot. *See United States v. Tucker*, 511 F. App'x 166, 169 (3d Cir. 2013) (affirming district court's holding that motions to dismiss are moot after a guilty plea is entered). Defendant's motion to withdraw his motion to dismiss at ECF No. 396 (ECF No. 442) is also denied as moot because, as discussed, the Court has denied all of Defendant's motions to dismiss.

Likewise, Defendant's motions to compel discovery (ECF Nos. 402, 403, 406, 477) must also be denied as moot, because Defendant has pleaded guilty to the charges for which he seeks

discovery. *See United States v. Harvey*, No. 12-113, 2014 WL 657595, at *1 n.1 (W.D. Pa. Feb. 20, 2014) (denying various pretrial motions as moot because defendant had pleaded guilty); *United States v. Robinson*, No. 05-443, 2007 WL 790013, at *12 (M.D. Pa. Mar. 14, 2007) (same). Given that Defendant's motion to compel discovery at ECF No. 403 is denied, the motion to expedite a decision on ECF No. 403 (ECF No. 404) is likewise denied as moot.

Defendant's motion to stay or delay ruling on pending motions (ECF No. 430) is also denied as moot. Defendant requested that the Court defer its ruling on his pending motions until May 27, 2025, pending potential discussions with the Government. ECF No. 430 at 1. That date has passed, and Defendant informed the Court that the Government did not respond to his efforts to engage in discussions. *See* ECF No. 432, 445. Therefore, Defendant's motion at ECF No. 430 is denied as moot.

Lastly, Defendant has filed a motion to seal his filing at ECF No. 448. ECF No. 466. This motion appears to be superseded by Defendant's requests to unseal documents. *See* ECF Nos. 484, 489. Given the volume of submissions regarding sealing by Defendant, *see, e.g.*, ECF Nos. 448, 451, 452, 466, 467, 468, 484, 489, Defendant's position as to which documents should remain sealed is unclear to the Court. Accordingly, Defendant and the Government are directed to meet and confer and submit a joint letter stipulating which documents should be sealed or unsealed, or setting forth their respective positions on the issue. Defendant's motion to seal is administratively terminated pending receipt of the joint letter.

## III. CONCLUSION

For the aforementioned reasons, the Court hereby denies Defendant's pending motions. Accordingly, IT IS on this 8th day of October, 2025:

**ORDERED** that Defendant's motions (ECF Nos. 396, 400, 401, 402, 403, 404, 406, 430, 442, 446, 451, 452, 453, 467, 469, 477, 482, 486) are **DENIED**; and it is further

**ORDERED** that the Government and Defendant shall submit a joint letter of no more than eight (8) pages, single-spaced, outlining any outstanding issues before the Court and/or among the parties that must be resolved before sentencing. The joint letter shall also stipulate which documents should be sealed or unsealed, or set forth the parties' respective positions on the issue. The joint letter shall be submitted on or before October 31, 2025; and it is further

**ORDERED** that Defendant's motion to seal (ECF No. 466) is **ADMINISTRATIVELY TERMINATED** pending receipt of the parties' joint letter.

      **SO ORDERED.**

 

**CLAIRE C. CECCHI, U.S.D.J.**

# APPENDIX

**Exhibit B**

Petitioner's Submission on Sealing and Unsealing

Filed October 28, 2025

(ECF No. 510)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

United States v. Goettsche, Weeks, et al.    No. 2:19-cr-877 (CCC)


**Letter from Defendant Weeks Pursuant to ECF 497 — Government Non-Response**

**VIA ECF**
October 28, 2025

Hon. Claire C. Cecchi
United States District Judge
Martin Luther King Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102


Re: Joint Letter Regarding Sealing / Unsealing of Records (Pursuant to ECF 497)

Dear Judge Cecchi:

Pursuant to the Court's October 8, 2025 Opinion and Order (ECF 497), directing the parties
to confer and submit a joint letter identifying which documents should remain sealed or be
unsealed, Defendant Jobadiah Sinclair Weeks respectfully submits this letter to document his
good-faith compliance and the Government's non-response.

Defendant transmitted a draft joint letter and supporting materials to Assistant U.S. Attorneys
Robert Moore and Trevor Chenoweth on October 10 and again on October 24, 2025,
requesting their input by October 27. The initial October 10 transmittal included the draft
Joint Letter, the draft Motion to Unseal, and the corresponding Annexe referenced therein.
The subsequent October 24 email provided the updated Annex A matrix for the
Government's completion. No response was received. Accordingly, Defendant files his
portion so that the record reflects his compliance with ECF 497 and the Government's
non-participation.


**Defendant's Position**

Defendant renews his prior requests to unseal Dkts. 477, 484, and 489, together with any
attached exhibits or schedules, for the reasons previously stated in his Renewed Motion to
Unseal.

The Government previously confirmed in writing (April 2, 2025) that the digital assets in question "would be returned" and has identified no continuing law-enforcement or privacy basis for secrecy. The sealed materials are necessary for accurate custody reconciliation, ongoing evidentiary hearings, and preparation for sentencing.

The IRS's income calculations underlying Defendant's plea and sentencing exposure were derived from wallet data and blockchain transactions contained within the sealed materials. Unsealing these records is therefore essential to verify the accuracy of those calculations and the integrity of the evidentiary record. Because those same materials form part of the factual basis that the Court was required to find under Fed. R. Crim. P. 11(b)(3), continued sealing impairs the Court's own ability to confirm that the plea rested on an accurate and complete record.

Any personally identifying information (e.g., wallet addresses) can be redacted in accordance with Local Civil Rule 5.3(c). Defendant therefore requests that the Court direct unsealing of the above dockets or otherwise order their production in unredacted form to complete the record.

**Government's Position**

*No response received from AUSAs Robert Moore or Trevor Chenoweth as of October 28, 2025.*

**Joint or Unresolved Matters**

Defendant does not object to narrowly tailored redactions consistent with Local Civil Rule 5.3(c). He requests that the Court consider the attached Annex A matrix when determining the appropriate scope of unsealing.

**Request for Expedited Consideration**

Given that this submission arises directly from the Court's October 8, 2025 Order (ECF 497) and that no response was received from the Government by the Court's prescribed deadline, Defendant respectfully requests expedited consideration so that the sealing status of the identified materials can be clarified before further proceedings or sentencing preparation continue. Prompt resolution will also ensure the record remains accurate and complete in accordance with Fed. R. Crim. P. 11(b)(3) and Local Civil Rule 5.3.

Respectfully submitted,

/s/ **Jobadiah Sinclair Weeks**
Pro Se Defendant
18101 Collins Avenue, #4209
Sunny Isles Beach, FL 33160
Signed via DocuSign

Signed by:
Joby Weeks
87866A420DB4490...

# APPENDIX

**Exhibit C**

Government's Submission on Sealing and Unsealing

Filed October 31, 2025

(ECF No. 512)



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, 7th floor*       973-645-2700
*Newark, New Jersey 07102*

October 31, 2025

**Via ECF**

Hon. Claire C. Cecchi
U.S. District Judge
Martin Luther King, Jr. Building
   & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

         Re:    *United States v. Jobadiah S. Weeks*, Crim. No. 19-877

Dear Judge Cecchi:

      We write in response to the Opinion and Order dated October 8, 2025, ECF No. 497 (the "October 8 Opinion and Order"), and the text order entered on October 22, 2025, ECF No. 508, requiring that the parties, by October 31, 2025, set out their positions on Defendant's motions to seal and unseal certain filings on the docket. The Defendant independently filed his response to the docket on October 28, 2025. ECF No. 510. The Government submits this joint letter after sharing a draft and conferring with Defendant through standby counsel.

      The Government agrees that all of the sealed docket entries identified by the Court in its October 8 Opinion and Order at page 22 may be unsealed. Those filings are summarized for the Court's convenience in a table below.

| ECF | Description of Sealed Filing | Government Position |
|-----|------------------------------|---------------------|
| 448 | Motion regarding alleged discrepancies in chain of custody of seized items. (Denied by the Court in October 8 Opinion and Order at 19–20). | Motion may be unsealed. No sensitive content appears in the motion. |
| 451, 452 | Motion to Dismiss Count 1 of the Indictment. (Denied by the Court in October 8 Opinion and Order at 21) | Motions may be unsealed. No sensitive content appears in the motions. References to the Draft PSR are not themselves sensitive. |

| ECF | Description of Sealed Filing | Government Position |
|---|---|---|
| 466, 467, 468 | Motion to compel ruling on ECF No. 446 (regarding seized assets), related motion to seal and proposed order. (Denied by the Court in October 8 Opinion and Order at 19–20). | Motions may be unsealed. No sensitive content appears in the motions or supporting papers. Further, Defendant requested unsealing himself in ECF Nos. 484 and 489. |

Based on the "Annex" attached to Defendant's October 28, 2025, filing it appears that Defendant agrees with the unsealing of the docket entries listed in the table above. ECF No. 510-1.[1] Other than unsealing of the docket entries listed above, the Government disagrees with the other relief requested in Defendant's "Annex," however.

In particular, the parties disagree about whether Defendant may seek further disclosures from the Government. Defendant appears to interpret the Court's October 8 Opinion and Order as inviting briefing regarding "unsealing" of "sealed" documents such as search warrant inventories and other documents that have never been docketed.

The Government's position is that the Court's October 8 Opinion and Order was correct in ruling that Defendant has no further right to seek discovery now that he has pleaded guilty and his motion to withdraw his guilty plea has been denied. ECF No. 497 at 21–22. The Defendant entered a guilty plea knowingly and voluntarily, and he waived his right to trial in the process. *See* ECF No. 146. As a result, he forfeited his right to additional discovery related to his guilt.

Thus, to the extent Defendant's motions to unseal are in reality motions to compel further disclosures by the Government, such as search warrant inventories, the Government opposes the motions for the reasons stated in its prior submissions and in the Court's October 8 Opinion and Order.

Accordingly, as stated in its letter dated October 21, 2025 addressed to Your Honor, the Government opposes Defendant's requests to renew his previously denied motions and believes that there are no further impediments to proceeding to sentencing (other than Defendant's motion for reconsideration). ECF No. 506.

The Defendant's position on these matters is set out in his October 28, 2025, filing, ECF No. 510, and in the paragraph below, which was provided by Defendant.

*Defendant, through standby counsel, submits the following position for inclusion in the parties' joint response to the Court's October 22, 2025 Text Order (ECF*

---

[1] Entry # 3 in Defendant's Annex A appears to refer, in part, to a motion filed by Defendant to unseal his own prior filings. ECF No. 484. None of the actual docket entries listed in the Annex themselves appear to be sealed, however.

*508): Defendant concurs that the sealed docket entries identified by the Court (Dkts. 448, 451–452, 466–468) may be unsealed. Defendant further understands the Court's October 8, 2025 Opinion and Order (ECF 497) to permit clarification of any materials necessary to ensure that the record is complete and accurate prior to sentencing, including those not yet docketed but relied upon in prior determinations. Consistent with the Motion for Reconsideration filed today, October 30, Defendant maintains that this limited record-correction process does not constitute renewed discovery but rather a procedural safeguard to ensure transparency and accuracy under Fed. R. Crim. P. 16, Brady v. Maryland, 373 U.S. 83 (1963), and Fed. R. Crim. P. 11(b)(3).*

Respectfully submitted,

TODD BLANCHE
United States Deputy Attorney General

ALINA HABBA
Acting United States Attorney
Special Attorney

By:   Trevor A. Chenoweth
Robert Taj Moore
Assistant U.S. Attorneys

cc:   Jobadiah S. Weeks (via ECF)
Ernesto Cerimele, Esq. (via ECF)

# APPENDIX

**Exhibit D**

Supplemental Motion for Return of Seized Digital Assets and Currency

Filed [insert date]

(ECF No. 520)

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

    Plaintiff,

v.

JOBADIAH SINCLAIR WEEKS,

    Defendant.

United States v. Goettsche, Weeks, et al.

Case No. 2:19-cr-877 (CCC)

## SUPPLEMENTAL MOTION FOR RETURN OF SEIZED DIGITAL ASSETS AND CURRENCY

### I. INTRODUCTION

Defendant respectfully submits this Supplemental Motion to clarify and narrow the specific

property that can and should be returned immediately under Fed. R. Crim. P. 41(g).

This filing does not include the 3.6704622 BTC that is already before the Court in Dkt. 511

(Motion for Reconsideration) and fully submitted for decision.

This supplement seeks the return of:

1. The following seven digital assets extracted by the Government on December 10,

   2019: (ETH, LTC, BCH, ANT, REP, BAT, and the 4.99995661 BTC shown in the

   agent log.)

   - 48.916537 ETH
   - 91.851854 LTC
   - 2.9765462 BCH
   - 492,694 ANT
   - 103.89077 REP
   - 4,922 BAT

○   4.99995661 BTC (shown in the December 10, 2019 agent log)

Of these assets, the 4.99995661 BTC is unaccounted for in all Government reports and

should be returned immediately.

2.  Seized U.S. currency that is uncontested and identifiable without forensic analysis

○   $4,410 (Colorado; Schedule A, Item 81)
○   $7,500 (Florida; unopposed amount documented in multiple filings)

Each item is identifiable, severable, and subject to return even as broader digital-asset

accounting issues remain pending.

## II. DIGITAL ASSETS NOT SUBJECT TO THE 3.67 BTC MOTION

### A. Digital Assets Extracted During the Government's Exodus Restore Operation

The following assets were transferred by agents during the December 10, 2019 "Exodus

restore" procedure and appear in the Colorado Memorandum of Activity:

Table 1 – Assets Extracted on December 10, 2019 (Colorado MoA)

*(3.67 BTC included for completeness; not requested here)*

| Asset | Amount | Evidence Source | Logged on Schedule A? | Returned ? | Notes |
|-------|--------|-----------------|-----------------------|------------|-------|
| BTC | 3.6704622 | Screenshot (Dkt. 511) | NO | NO | Subject of separate ruling |
| BTC | 4.99995661 | Agent Log / Annexe | NO | NO | Shows missing BTC discrepancy |
| ETH | 48.916537 | Exodus Screenshot | NO | NO | Extracted by agents |
| LTC | 91.851854 | Exodus Screenshot | NO | NO | Extracted by agents |
| BCH | 2.9765462 | Exodus Screenshot | NO | NO | Extracted by agents |
| ANT | 492,694 | Exodus Token Log | NO | NO | ERC-20 extracted |

| REP | 103.89077 | Exodus Token Log | NO | NO | ERC-20 extracted |
| BAT | 4,922 | Exodus Token Log | NO | NO | ERC-20 extracted |

Under Rule 41(g), the Government bears the burden of demonstrating a lawful basis for
continued retention once the existence and seizure of property is undisputed.

They were extracted by Government agents during a controlled restore and are therefore
traceable to a single event.

The Government has never disputed their existence or the amounts.

No forfeiture proceedings exist.

Return is appropriate under Rule 41(g).

The 4.99995661 BTC transfer is blockchain-verified (Government log + on-chain
confirmation).

The 3.6704622 BTC appears in the extraction table for completeness, but Defendant is not
requesting its return in this motion because it is already before the Court in Dkt. 511.

### B. Missing ≈5 BTC (Blockchain-Verified and AUSA-Acknowledged)

The restored Exodus wallet received:

- ≈8.67 BTC total inflows on December 10, 2019
- ≈3.67 BTC is acknowledged in the Government's crypto report
- ≈5 BTC is unaccounted for

This ≈5 BTC is:

1. Proven through blockchain analysis (Exhibit E)
2. Acknowledged by former AUSA Torntore in writing on December 6, 2024 as absent
   from the Government's inventory
3. Unopposed in every Government filing

As with the ETH / LTC / BCH, the ≈5 BTC is identifiable and must either be returned or the Government must explain its whereabouts in a sworn chain-of-custody declaration.

### III. U.S. CURRENCY REQUESTED

#### A. $4,410 — Colorado Seizure (Schedule A, Item 81)

Schedule A (Dkt. 421 Attachment A) lists Item 81, showing the following seized amounts:

- $3,400 in $100 bills
- $1,000 in $50 bills
- $2
- $8 in coins

    Total: $4,410

The Government has never disputed this amount or its seizure.

#### B. $7,500 — Florida Seizure (Unopposed Amount)

The Florida Memorandum of Activity documents:

- cash discovered concealed inside Defendant's belt, and
- additional currency hidden inside a phone case,
    both recovered during intake and sealed.

The MoA does not list a numeric total.

However:

- Defendant has consistently stated the amount as $7,500 in Dkts. 446, 480, 485, and 486;
- The Government has never disputed this figure, never offered a different amount, and never initiated forfeiture.

Under Rule 41(g) and Third Circuit precedent, unrebutted factual assertions regarding seized

property are accepted as true.

This cash should be returned.

## IV. RELIEF REQUESTED

Defendant respectfully requests that the Court order the Government to return the following

property within seven (7) days:

Digital Assets

- 48.916537 ETH
- 91.851854 LTC
- 2.9765462 BCH
- 492,694 ANT
- 103.89077 REP
- 4,922 BAT
- 4.99995661 BTC

Currency

- $4,410 (Colorado — Schedule A, Item 81)
- $7,500 (Florida seizure — undisputed amount)

If the Government contends that any asset cannot be returned, it should be required to file a

sworn declaration from the responsible IRS-CI or FBI custodian identifying:

1. the current location of the property,
2. all chain-of-custody entries,
3. any transfers or conversions, and
4. the legal basis for continued retention.

This narrow request does not affect the broader pending motions regarding full digital-asset

accounting, device-based cryptocurrencies, or unresolved discrepancies in the Government's

December 2019 seizure logs.

5

## V. EXHIBITS

To be filed with the supplement:

- Exhibit A — Schedule A Item 81 ($4,410)
- Exhibit B — Florida MoA excerpt (cash seizure noted)
- Exhibit C — Colorado MoA Digital-Asset Extraction Attachments (ETH, LTC, BCH, ANT, REP, BAT "Success" Logs)
- Exhibit D — AUSA Torntore December 6, 2024 acknowledgment re missing BTC
- Exhibit E — Government-created report pages showing the 4.99995661 BTC transfer

Respectfully submitted,
/s/ Jobadiah Sinclair Weeks
Pro Se Defendant
Dated: November 18, 2025
18101 Collins Avenue, #4209
Sunny Isles Beach, FL 33160

Signed by:
*Jobny Weeks*
87866A420DB4490...

6

# APPENDIX

**Exhibit E**

Status Letter Regarding Pending Unsealing Issues

Filed December 16, 2025

(ECF No. 540)

**United States v. Jobadiah Sinclair Weeks**
Crim. No. 19-877 (CCC)

**Hon. Claire C. Cecchi**
United States District Judge
District of New Jersey

Re: Request for Ruling on Motion to Unseal Asset-Related Records

Dear Judge Cecchi:

Defendant Jobadiah Sinclair Weeks respectfully submits this brief letter regarding the
status of the sealing and unsealing issues addressed in the Court's October 8, 2025
Opinion and Order (ECF No. 497) and October 22, 2025 Text Order (ECF No. 508).

Pursuant to the Court's directive, the parties conferred and submitted their respective
positions concerning the sealing and unsealing of filings relating to seized assets.
Defendant filed his submission on October 28, 2025 (ECF No. 510), and the
Government filed its joint letter on October 31, 2025 (ECF No. 512). The issue has
therefore been fully briefed and ripe for resolution for several weeks.

Defendant respectfully notes that the sealed materials at issue concern seized assets and
related records that have been referenced in prior proceedings, and that Defendant does
not currently have access to the underlying warrant, inventory, or associated materials.
Resolution of the sealing and unsealing issue would permit verification and, if
necessary, correction of the record, and would assist in ensuring transparency and
accuracy going forward.

Defendant fully appreciates the Court's docket demands and the upcoming holiday
period, and submits this letter solely to request guidance as to when the Court
anticipates resolving the sealing and unsealing issue, or whether the Court intends to
address it in a forthcoming order.

Respectfully submitted,

/s/ Jobadiah Sinclair Weeks
Jobadiah Sinclair Weeks
Defendant, pro se
Address on file with Pretrial Services
Dated: December 16, 2025

Signed by:
Joby Weeks
87806A420DB4490...

# APPENDIX

**Exhibit F**

Status Letter Regarding Pending Rule 41(g) Motions

Filed December 17, 2025

(ECF No. 541)

**United States v. Jobadiah Sinclair Weeks**
Crim. No. 19-877 (CCC)

**Hon. Claire C. Cecchi**
United States District Judge
District of New Jersey

**Re: Status of Pending Rule 41(g) Motions for Return of Seized Property**

Dear Judge Cecchi:

Defendant Jobadiah Sinclair Weeks respectfully submits this brief status letter
regarding his pending motions for return of seized property under Fed. R. Crim. P.
41(g), including the Supplemental Motion for Return of Seized Digital Assets and
Currency filed on November 18, 2025 (ECF No. 520). Defendant has raised requests
for return of the same acknowledged digital assets and currency in multiple filings over
the past several months, and those requests remain unresolved.

The Rule 41(g) motions presently before the Court seek the return of discrete and
severable items of property, including specific digital assets and U.S. currency, that the
Government has never disputed were seized and for which no forfeiture proceedings
have been initiated. As detailed in ECF No. 520, the Government has also
acknowledged in writing that certain Bitcoin extracted during the December 10, 2019
wallet restore remains unaccounted for.

The relief requested is narrow. Defendant does not seek discovery or evidentiary
hearings, but only an order directing the return of the identified property or, in the
alternative, a sworn declaration from the appropriate custodian identifying the current
location of the property and the legal basis for any continued retention.

Because Rule 41(g) imposes a non-discretionary obligation once the existence and
seizure of property are undisputed and no forfeiture basis exists, Defendant respectfully
requests guidance as to when the Court anticipates ruling on the pending Rule 41(g)
motions, or whether the Court intends to address those requests in a forthcoming order.

Defendant appreciates the Court's docket demands and the upcoming holiday period,
and submits this letter solely to ensure that the Rule 41(g) requests—which concern
acknowledged and uncontested property—are resolved in an orderly manner.

Respectfully submitted,

/s/ Jobadiah Sinclair Weeks
Jobadiah Sinclair Weeks
Defendant, pro se
Address on file with Pretrial Services
Dated: December 17, 2025

Signed by:
Joby Weeks
87866A420DB4490

